FIRST NATIONAL BANK OF WINSTON v. H. L. RIGGINS.

(Decided April 15, 1899).

*Stock Note—Set-off.*

1. Where a Bank is in course of liquidation, and a stockholder is indebted to the Bank by note secured by pledge of stock, his supposed share in the assets is not available as a set-off, legal or equitable, in a suit upon the note.

2. Stock pledged as collateral must be released by payment or sale before it is entitled to prorate in the assets of a Bank winding up its business. The general rule is, in such cases, that the *net* balance must be distributed *pro rata* among the beneficiaries.

3. DOUGLAS, J. (Concurring in the judgment but not in the opinion of the Court), expresses as his view of the case (concurred in by MONTGOMERY, J.) that it does not involve any equitable principles, but simply a question of legal set-off or counter-claim, and as defendant's share was not demandable at the bringing of the action, or at any time before judgment, it was not the subject of set-off or counterclaim; creditors having been settled with, if a partial dividend payable out of remaining assets on hand, had been declared, it would have been available as a set-off in this action.

CIVIL ACTION upon a promissory note for $1,300, payable to the Bank, and passed due, secured by pledge of ten shares of the capital stock lodged as collateral security—tried before *Allen, J.,* at February Term, 1899, of the Superior Court of FORSYTH County.

The relief asked was judgment on the note and order of sale of the stock, unless the judgment was paid in some reasonable time. The defendant set up a counter-claim of $800, alleging that when the debts due the Bank are collected and its property reduced to money, his distributive share in the assets would amount to at least that sum. Judgment was

rendered in favor of plaintiff for $1,300 and interest.    After judgment, the defendant moved the Court for the appointment of a receiver, a referee to take and state all accounts, and ascertain the amount to be credited on the judgment, and an order of restraint in the meanwhile—all of which motions were refused by the Court, and defendant excepted and appealed.

*Messrs. Watson, Buxton & Watson,* and *Jones & Patterson,* for appellee.

No counsel for appellant.

FAIRCLOTH, C. J., writes the opinion of the Court.

DOUGLAS, J., concurring in the judgment but not in the opinion.

MONTGOMERY, J., concurs in the concurring opinion.

FAIRCLOTH, C. J.    The plaintiff, the First National Bank, is in liquidation, and a committee duly appointed has charge of its property, to collect the assets and pay its debts, and distribute the balance among the stockholders.    The defendant is a stockholder in plaintiff bank, and is indebted to it for his stock, which was deposited as collateral security, and this action is brought to collect the amount due on said stock, and to sell the stock in payment, or part payment of the amount found to be due.

The defendant alleges that upon a final settlement of the bank's affairs, he will be entitled to $800, as his distributive share of the assets, and demands a credit on his debt for that amount.    This allegation and this right are denied, and it does not appear what will be his distributive share.    In cases of insolvency, private or corporate, the general rule is that the *net* balance must be distributed *pro rata* among the beneficiaries.

Under the National Banking Act, when an assessment is

made, each stockholder is required to pay his part in full, regardless of whether he is a debtor or creditor of the bank, and when the collections are made, and all debts and expenses are discharged an equitable distribution of the assets is made. The same rule applies in the settlement of insolvent estates by executors and administrators. And so it is in winding up the business of insolvent Building and Loan Associations, as was held by this Court in *Meares v. Duncan,* 123 N. C., 203, and cases cited.

If the defendant's contention was allowed, he would get the full value of his stock, at least *pro tanto,* and thus the net amount for the other stockholders would be reduced, and the principle of an equitable settlement would be disturbed, as the liability of the stockholder would be diminished, and that of the other stockholders increased, which would be a result not contemplated in law or equity. As a stockholder, he is liable to an amount equal to his stock, or to a just proportion if all is not required; but as a creditor, he is entitled only to a dividend in proportion to other creditors. His liability as a contributor for the benefit of creditors must be distinguished from his character as a simple contract debtor to the bank upon ordinary business transactions. The money arising from unpaid shares is a trust fund for all the creditors, and can not be affected by any individual transactions of the stockholder, to the prejudice of the other stockholders. *Hobart v. Gould,* 8 Fed. Rep., 57; Morse on Banks and Banking, p. 500.

Besides, the distributive share of the defendant is unknown, and it seems it would be impracticable to ascertain it with any certainty.

The above authorities do not stand upon facts *on all fours* with the present case, but they all enunciate a principle plainly applicable to the present case; and that principle is so manifestly just that we have no hesitation in adopting

it.   We think therefore that the defendant can not set-off what he supposes to be his distributive share against his individual indebtedness to the bank.

Affirmed

DOUGLAS, J., concurring:   I concur in the judgment of the Court, but not in the opinion, which is based upon principles some of which have apparently no application to the facts, and may be confusing to us in other cases.

I do not think this case involves any equitable principles, but is simply a plain question of legal set-off, or counterclaim, as all such matters are now designated under The Code.   Neither does it come within the principles governing the rights of creditors to the assets of an insolvent corporation, for the simple reason that there are no creditors, as is expressly alleged in the complaint, and admitted in the answer.   Strictly speaking   the   bank is not   insolvent, because it owes no debts, but has gone into voluntary liquidation because its capital has become impaired to such an extent as to prevent its carrying on a profitable business.   It is true that all corporations in their statements place their capital stock among their liabilities, but this is necessary to off-set the asset representing the money paid in on the stock.   Paid up stock may in one sense be a liability of the corporation, but in no sense can it be a debt.   It represents a certain share or part of the corporation, and for that reason, in England, the holders of such shares are called *shareholders* instead of stockholders.   Such holders can not withdraw their stock at will, but only upon the dissolution of the corporation, and then they are entitled, not to any particular sum, but to such a proportion of its assets as their respective shares bear to the entire stock.   This can not be definitely ascertained until the assets are all collected or reduced to a certainty.   They

are, of course, entitled to reasonable dividends, but such dividends should come only from profits, and should never impair the capital. As a stockholder is entitled only to his distributive share, he can not demand it in advance of a general distribution. By this is not meant a final distribution, but such a distribution in whole or in part as applies equally to all the stockholders. In other words, if one stockholder is given ten per cent., all can demand ten per cent. As the defendant's share was not demandable at the bringing of this action or at any time before judgment, it was not the subject of set-off, which at common law applied only to mutual debts upon which independent actions could have been brought. The counter claim is the creature of The Code, and is an extension of the set-off, enlarging the class of claims that may be pleaded, and enabling the defendant to obtain judgment for the excess; but The Code (Section 244) specifically provides that "The counter-claim...must be one existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action." This question is discussed in *Electric Co. v. Williams,* 123 N. C., 51. If the stock itself and the money due in payment therefor were mutual debts, capable of mutual set-off, then no stock subscription could ever be collected; and if the stockholders could individually withdraw their shares at their option, the very purpose of incorporation would be defeated. As the defendant could not have brought suit for his individual stock, then he can not set it off against the debt due the plaintiff. The note sued on is clearly a debt, although given in part payment of a stock subscription. The defendant subscribed for twenty shares of the capital stock of the plaintiff bank, and apparently paid $700 in cash and gave his note for the balance with the stock itself as collateral security. It appears that by consent the capital of the bank was reduced

one-half on account of losses, but as the reduction was uniform, the actual value of the stock remained the same, as it represented the same relative proportion of ownership in the same amount of assets.    It therefore makes no difference in this suit.

It is the duty of those winding up the affairs of a corporation to do so with the least possible expense and inconvenience to the stockholders, but in the absence of any allegation of fraud or oppression we should not interfere with their reasonable discretion, even in a proper action. We certainly can not do so on a mere plea of set-off or counter-claim.

For the reasons herein stated I concur in the judgment of the Court.

MONTGOMERY, J.    I concur in the concurring opinion.