## MARKUS v. AUSTIN, Commissioner of Banking. (No. 1344.)

(Court of Civil Appeals of Texas. Beaumont. April 9, 1926. Rehearing Denied May 19, 1926.)

**1. Banks and banking $\Longleftrightarrow$47(1).**

Commissioner of banking is authorized to make such assessments against stockholders as he deems necessary to pay indebtedness of insolvent bank.

**2. Banks and banking $\Longleftrightarrow$47(2)—Action of commissioner of banking in determining insolvency and in making assessment of stockholders is final, and not subject to judicial review.**

Action of commissioner of banking in determining insolvency of bank and in making assessment of stockholders for purpose of paying indebtedness and amount of such assessment is final, and not subject to judicial review.

**3. Banks and banking $\Longleftrightarrow$49(4)—Stockholder of insolvent bank is not entitled to offset against his liability to pay assessment, amount previously assessed against him to make good bank's impaired capital (Rev. St. 1925, arts. 365, 535).**

Stockholder of bank is not entitled to offset against his liability to pay assessment, under Rev. St. 1925, art. 535, after insolvency of bank, amount previously assessed by commissioner of banking to make good bank's impaired capital, under article 365.

**4. Banks and banking $\Longleftrightarrow$49(4)—Payments by stockholders to restore impaired capital of bank cannot be offset against assessment of stockholders of insolvent bank to discharge indebtedness during liquidation.**

Payments, made for purpose of restoring impaired capital of bank, cannot be offset against assessment of stockholders of insol-

vent bank to discharge its indebtedness in course of liquidation.

### On Motion for Rehearing.

**5. Evidence $\Longleftrightarrow$65.**

Stockholder of bank must be *held* to have had knowledge of statutes regulating conduct of state banks.

**6. Banks and banking $\Longleftrightarrow$47(3)—If commissioner of banking and bank stockholder agreed that, on payment of assessment to restore impaired capital, stockholder would not be held liable for any assessments if bank should become insolvent, such agreement was void, as against provision of law and fraud on creditors (Rev. St. 1925, art. 535).**

If the commissioner of banking and stockholder of bank entered into agreement that, on payment of assessment restoring impaired capital, stockholder would not be held liable for assessment provided by Rev. St. 1925, art. 535, such agreement was void as against provisions of law and fraud on creditors.

Appeal from District Court, Angelina County; C. A. Hodges, Judge.

Suit by Charles O. Austin, Commissioner of Banking, against Jake Markus, wherein defendant brought a cross-action. Judgment for plaintiff, and defendant appeals. Affirmed.

Mantooth & Denman, of Lufkin, for appellant.

Fairchild & Redditt, of Lufkin, for appellee.

O'QUINN, J. Charles O. Austin, commissioner of banking of the state of Texas, brought this suit against Jake Markus to recover the sum of $1,500, alleged to be due by said Markus to said Austin, as commissioner of banking, by virtue of an assessment alleged to have been made on January 10, 1925, against the stockholders of the Citizens' Guaranty State Bank of Lufkin, Tex.; it being alleged that Markus was, at the time said assessment was made, the owner of 15 shares of the capital stock of said Citizens' Guaranty State Bank, of the alleged value of $100 per share.

Markus answered by general demurrer, special exceptions, and general denial. He also further and specially alleged, in substance:

(1) That at the time the commissioner of banking determined that the Citizens' Guaranty State Bank of Lufkin, Tex., was insolvent, and at the time he closed its doors and took over its affairs, said bank was not insolvent, but was possessed of sufficient moneys, property, and assets to discharge all of its obligations, and that there was no necessity for an assessment against its stockholders, all of which was well known to the said Banking Commissioner, but that, notwithstanding, he arbitrarily and fraudulently and with intent to deprive appellant of his property rights,

---

$\Longleftrightarrow$For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

unlawfully and fraudulently and without any necessity levied said assessment.

(2) That on March 26, 1924, the commissioner of banking, acting by and through one of his duly authorized and acting bank examiners, made an examination and audit of the books of said bank, and determined that the capital stock of said bank was impaired, and through his said agent and representative, said bank examiner, called a meeting of the board of directors of said bank, and advised said board, of which appellant was a member, and present at said meeting, that said bank would be closed immediately by the department of banking unless the directors paid into said bank the sum of $25,000, to be used by said bank as a part of its assets to replenish the impairment of the capital stock, and said commissioner of banking, through his agent, said bank examiner, stated to said directors that the said sum of $25,000 would be repaid to them in the event the earnings of the bank thereafter accumulated in a sufficient amount to do so. That appellant, at said date, owned 10 shares of the capital stock of said bank, and he paid into said bank the sum of $1,666.66, which, together with a like sum paid by each and every other director, made up the $25,000 which the banking department required of said directors. That said payment was made by appellant involuntarily and under business compulsion and by reason of the coercion of the commissioner of banking, and by reason of his threats to immediately close said bank, and for the further reason that appellee, through his agent, said bank examiner, stated to appellant and the other directors present that, upon the payment of said $25,000, the assets of said bank would be sufficient to put said banking institution in a perfectly solvent condition, and thereby eliminate the impairment of the capital stock, and place said bank on a sound financial basis, and said agent further assured and promised appellant and the other directors that they would not be required to pay any further assessments exacted from them, and it was by this assurance and by virtue of the promises made by appellee, through his said agent, and for the further reason that said agent stated that said bank would be closed immediately, that appellant paid said sum of money into said bank, and that said sum paid any and all assessments for which appellant was legally liable under the law, and the sum of $166.66 in excess thereof. That from the time of the payment of said $25,000 into the bank until the closing of said bank on January 10, 1925, there were no changes made in the status of said bank, in that the board of directors remained the same, no new or additional loans were made, no new or additional sums were borrowed by said bank, and, in fact, no material change was made with respect to the financial condition of said bank. That the depositors' relations to said bank were not changed, the bank's customers entered into no new obligations, no new obligations were incurred, or any depositors obtained, but that from the 26th day of March, 1924, being the date on which the involuntary payment of said sum of $25,000 was made into said bank, until the closing of said bank on January 10, 1925, the status of said bank was not changed in any manner, and the same debts and liabilities which said bank owed on March 26, 1924, were due and owing on January 10, 1925, to the same individuals and concerns and creditors and depositors as on the 26th day of March, 1924, and that the said sum of $25,000 paid into the assets of said bank by appellant and the other directors of said bank was used and is being used by appellee to pay the same identical obligations of said bank that were owing by it on the 26th day of March, 1924, and that the said involuntary payment made by appellant is being used to pay and has paid the same debts and no others that would be paid by the assessment herein sought to be enforced against appellant, and appellant says that the said sum of $1,666.66 so paid by him should be applied as a credit and offset against the amount sued for herein, and that he is entitled to recover the excess of $166.66.

(3) Appellant further answered and pleaded as an offset against the assessment against him the said sum of $1,666.66 paid by him as in repairment of impaired capital and by cross-action sought to recover the difference between said sum and said assessment, being $166.66.

Appellee filed and urged a general demurrer to the defendant's special answer, setting up fraud and duress on the part of appellee, and as against such portions of said answer as alleged the involuntary payment and the agreements and promises of appellee by virtue of which said payment was made to appellee, and to the matters alleged as to the condition of the said bank at the time of the payment of said assessment and at the time of the closing of said bank, and the making of said assessment, and a general demurrer to the cross-action of the defendant herein for the sum of $166.66.

The court sustained the general demurrer of appellee to appellant's answer and cross-action. The case was tried to the court without a jury, and upon the conclusion of the evidence the court rendered judgment for appellee in the sum of $1,500, with interest thereon at the rate of 6 per cent. from the date of judgment.

Appellant presents two assignments, both asserting fundamental error. The first insists that the court erred in sustaining appellee's general demurrer to his answer, insisting that same showed a meritorious and legal defense to appellee's cause of action. The second urges that the court erred in sustaining appellee's general demurrer to his plea of set-off and in rendering judgment against him on his cross-action.

After a most painstaking and careful con-

sideration of the defenses pleaded, the facts shown, and the questions involved, we have concluded that the judgment must be affirmed.

[1, 2] We think that beyond question the Citizens' Guaranty State Bank was insolvent at the time it was taken over by the commissioner of banking. The law is unquestioned that the commissioner of banking was authorized to make such assessment against the stockholders, as he deemed necessary to pay the indebtedness of the bank. The action of the commissioner of banking in determining the insolvency of a bank, and in making an assessment of the stockholders for the purpose of paying its indebtedness, and the amount of such assessment, is final, and not subject to judicial review. This is the well-settled rule in both state and federal jurisdictions. Collier v. Smith (Tex. Civ. App.) 169 S. W. 1108 (writ refused); Brooks v. Austin (Tex. Civ. App.) 206 S. W. 723 (writ refused); Knollenberg v. Chapman (Tex. Civ. App.) 258 S. W. 547 (writ refused); Houston National Exchange Bank v. Chapman (Tex. Civ. App.) 263 S. W. 929 (writ refused); Chapman v. Denton (Tex. Civ. App.) 268 S. W. 259; Chapman v. Pettus (Tex. Civ. App.) 269 S. W. 268 (writ refused); Austin v. Duffer (Tex. Civ. App.) 279 S. W. 318 (writ refused); Kennedy v. Gibson, 75 U. S. (8 Wall.) 505, 19 L. Ed. 476; Casey v. Galli, 94 U. S. 673, 24 L. Ed. 168; Korbly v. Springfield, 245 U. S. 333, 38 S. Ct. 88, 62 L. Ed. 331; Harris v. Briggs (C. C. A.) 264 F. 726; Bank v. Murray, 212 F. 140, 128 C. C. A. 652; Thomas v. Gilbert, 55 Or. 14, 101 P. 393, 395, 104 P. 888, Ann. Cas. 1912A, 516.

But appellant insists that the court erred in sustaining appellee's general demurrer and in rendering judgment against him, because his payment of the sum of $1,666.66 assessed or required by appellee to restore the impaired capital should have been set off against the stock assessment here in controversy, and his cross-action for $166.66 sustained.

[3] We are of the opinion that appellant is not entitled to offset against his liability to pay the assessment due on his stock, the $1,666.66 paid by him on the $25,000 assessed by the commissioner of banking to make good the bank's impaired capital. Article 365, Revised Civil Statutes 1925 (article 523, Complete Tex. St. 1920, or Vernon's Sayles' Ann. Civ. St. 1914), provides that, whenever the commissioner of banking shall have reason to believe that the capital stock of any bank subject to the banking laws of the state is reduced by impairment or otherwise below the amount required by law or its certificates of articles of association, he shall require such bank to make good such deficiency. The record discloses that on March 26, 1924, before the bank was closed January 10, 1925, the commissioner of banking was insisting that the capital stock of the Citizens' Guaranty State Bank was impaired by reason of cer-

tain losses and other contingent liabilities to the extent of $25,000, and that same should be made good at once by an assessment of the stockholders, which was made known to the officers of said bank, and a meeting of the board of directors of said bank was duly called and held, at which meeting the following proceedings were had:

"Minutes of a Meeting of the Board of Directors of the Citizens' Guaranty State Bank, Held March 26, 1924:

"The meeting was called to order by the president, C. B. Collins, and the following directors were present and took part in the meeting: C. B. Collins, J. O. Crumpler, Jake Markus, Louis Markus, Harry Abram, J. E. Peavy, W. R. Fuller, G. R. Thompson, R. C. Jordan, T. L. Wilson, Mrs. W. D. Holloway, W. F. Powell, and Coke Murphy.

"At this meeting of the board of directors of this bank, at which a majority of the members were present, it was considered by the board that the commissioner of banking for Texas was then insisting that the capital stock of the bank was impaired by reason of certain losses and other contingent liabilities and should be restored at once by an assessment of the stockholders or some other method, and the same commissioner had suggested that the paying into the capital stock of the bank of the sum of $25,000 cash would adequately take care of said impairment, and it not being considered good policy to disturb the stockholders at this time and give any undue publicity to the condition of the bank.

"It was therefore moved by W. F. Powell and seconded by W. R. Fuller that the fifteen directors of the bank assess themselves the sum of $25,000 by each paying into the bank the sum of $1,666.66⅔ each in cash within ten days from this date to adequately provide for said impairment of the capital of the bank, and that each of the directors so paying in said amount of money be hereafter reimbursed for same out of the profits and surplus of the bank, together with interest on the amount so paid in from date same was paid in until refunded to said directors at the rate of 8 per cent. per annum, and that no dividends be paid by the bank until all of said sums and interest thereon are repaid to said directors. Said motion was duly presented to the board of directors by the president and was in all things duly carried, and thereupon and in pursuance thereof the directors all signed an agreement which read in words and figures as follows:

"Whereas, at a meeting held by the directors of the Citizens' Guaranty State Bank of Lufkin, Texas, on this the 26th day of March, 1924, a resolution was passed by the board of directors that each of them would pay into said bank the sum of $1,666.66⅔ each as an assessment as said directors to relieve the impaired capital stock of said bank, and each of the undersigned, being one of said directors, hereby agrees and binds himself (or herself) to pay into said bank within ten days from this date the said sum of money shown opposite his, or her, name herein and hereto subscribed, said sum to be paid in cash, and it is further understood that each of the undersigned are to be hereafter reimbursed for said money so paid in by them to said bank, the same to be reim-

bursed to them by said bank out of and from the surplus and undivided profits of said bank from time to time as the same are earned by said bank, together with interest on the amount so paid on by each of the undersigned from date it was paid in until paid back to said directors at the rate of 8 per cent. per annum, and it being further understood that no dividends are to be paid by said bank to the stockholders thereof until all the amounts named herein are paid by the undersigned with all interest thereon has been repaid to said directors:

| | |
|---|---:|
| Chester B. Collins | $1,666 66 |
| T. L. Wilson | 1,666 66 |
| Mrs. W. D. Holloway | 1,666 66 |
| Coke Murphy | 1,666 66 |
| Jake Markus | 1,666 66 |
| R. C. Jordan | 1,666 66 |
| W. R. Fuller | 1,666 66 |
| Louis Markus | 1,666 66 |
| J. E. Peavy | 1,666 66 |
| J. O. Crumpler | 1,666 66 |
| Harry Abram | 1,666 66 |
| W. F. Powell | 1,666 66 |
| G. R. Thompson | 1,666 66 |
| D. H. Adams | 1,666 66 |
| R. W. Swank | 1,666 66" |

[4] By reason of the premises, the above-named persons, stockholders, and directors of said bank, the sum of $25,000 was paid into the assets of said bank; the appellant here paying the sum of $1,666.66, as above shown, and as by him pleaded in his answer herein. In calling upon the officers and stockholders of the bank to make good the impairment of its capital, the commissioner was only doing that which the law made it his duty to do, in which act there was not and could not be any legal duress in the sense pleaded by appellant. The constitutional liability of stockholders in banking corporations was designed wholly for the benefit of creditors, and constitutes a fund available only when the bank is insolvent and unable to meet its obligations in full. The purpose of the assessment of $25,000 was not to benefit creditors, because the bank was then a going concern, but was only for the purpose of repairing its impaired capital, and was a benefit to the corporation and to the stockholders only. The creditors of the bank had no right to participate in the proceeds of this assessment. It was to enable the bank to continue in business for the benefit of the stockholders, which it did until January 10, 1925. It appears that the assessment of the $25,000 by the directors upon themselves was voluntary for the purpose of restoring their impaired capital, or lost capital, as a consideration for the privilege of continuing in business, and to avoid liquidation, and therefore is not the assessment contemplated in article 535, Revised Civil Statutes 1925 (552), by which every stocknolder is made personally liable for all debts of the bank to an amount double the par value of his stock. The payment of said sum of $25,000 was not compulsory. The stockholders could have refused and let the bank have gone into liquidation. Its pay-

ment was therefore voluntary, and paid into the general funds of the bank as a further investment in the capital stock of the bank, and to be disposed of by the officers of the bank in the ordinary course of business. We think the law is well settled that payments made for the purpose of restoring the impaired capital of a bank cannot be offset against an assessment of the stockholders of an insolvent bank, for the purpose of discharging its indebtedness in the course of liquidation. Chapman v. Hopper (Tex. Civ. App.) 261 S. W. 166; Delano v. Butler, 118 U. S. 634, 7 S. Ct. 39, 30 L. Ed. 260; Blackert v. Lankford, 74 Okl. 61, 176 P. 532; Trust Co. v. Bradbury, 117 Minn. 83, 134 N. W. 513, Ann. 1913D, 69; Duke v. Force, 120 Wash. 599, 208 P. 67, 23 A. L. R. 1354; Richards v. Schwab, 101 Misc. Rep. 128, 167 N. Y. S. 535; Golden v. Cervenka, 278 Ill. 409, 116 N. E. 273, 287; 3 R. C. L. 397. If appellant's claim were allowed as an offset against his stock assessment, it would follow that in every case payments made by stockholders for the purpose of restoring impaired capital would be considered as credits upon the ultimate individual liability of stockholders, and the whole efficiency of article 535 (552) for the protection of creditors of the bank at the time of liquidation would be destroyed. The obligations of stockholders, under articles 365 (523) and 535 (552), are entirely diverse, and payments made under the first cannot be applied to the satisfaction of individual responsibility secured by the latter.

The matters pleaded by appellant amounted in law to no defense against appellee's cause of action, and therefore the count did not err in sustaining the general demurrer thereto.

The judgment of the trial court should be affirmed, and it is so ordered.

Affirmed.

### On Motion for Rehearing.

On a former day of this term, we affirmed the judgment of the trial court, holding that the matters pleaded by appellant did not constitute a defense to appellee's cause of action. Appellant has filed a motion for rehearing, and, among other things, asserts that the court erred in overruling appellant's proposition No. 5, which is as follows:

"Where the plaintiff herein, through its agent, stated to the defendant that the payment of the sum of $1,666.66 would place the Citizens' Guaranty State Bank of Lufkin, Tex., in good financial condition, and that said sum would be repaid to him, and that no future assessment could or would be made against him by reason of the insolvency of said bank, and said sum was so paid upon the faith of said statement and promise, which were not true, and which the plaintiff, at the time of the making of same well knew were not true, constitute fraud upon the part of the plaintiff herein and is sufficient as a defense in a suit of an assessment thereafter made against the defendant as a stockholder of said bank."

We think that all of the contentions of appellant in his motion for a rehearing are fully met in our original opinion, but as he so strongly insists that a promise was made to him and others of the directors who paid in the sum of $25,000 to restore the impaired capital of the bank, that if they made such payment they could not and would not be required to pay any future assessment by reason of the insolvency of the bank, and hence his said defense should have been sustained, we shall here again consider same. Article 365 (523), Revised Civil Statutes 1925, provides that, whenever the commissioner shall have reason to believe that the capital stock of any banking corporation subject to the provisions of the state banking law is reduced by impairment or otherwise below the amount required by law or its certificate or articles of association, he shall require such corporation to make good the deficiency. Under this law, the $25,000 was paid into the general treasury of the bank.

Article 535 (552) provides that, in case of the insolvency of a bank, each stockholder shall be liable for the debts of the bank to an amount double the par value of his stock. Under this law the assessment in controversy was made.

[5, 6] These laws are statutes regulating the conduct of state banks, the business in which appellant was engaged, and he must be held to have had knowledge of them, for all men are presumed to know the law. It is plain that the purposes of these statutes are wholly different, and that money paid by virtue of one does not meet the demand for payment under the other. As was said in our main opinion, the payment of the money to restore the impaired capital was for the benefit of the institution itself and of its stockholders, and not for the benefit of the creditors, for they could not participate in same. It was not intended to be applied to the payment of their claims, but was to enable the bank to continue in business and to be used for that purpose. The commissioner of banking had no authority under the law to make any such promise as is alleged by appellant, that, if the payment of the assessment to restore the impaired capital was made, and the bank should in the future become insolvent, appellant could not and would not be made to pay the assessment provided by article 535 for the discharge of its debts, and, if the commissioner and appellant entered into any such agreement, it was void because it was against the provision of the law and a fraud upon the creditors whose protection was provided in said law. The said law could not be rendered nugatory by an agreement or contract between the commissioner and appellant. Scovill v. Thayer, 105 U. S. 143, 26 L. Ed. 968, 974; Sanger v. Upton, 91 U. S. 56, 23 L. Ed. 220, 222. If it should be considered that the bank owed appellant for the $1,-666.66 that he paid as for the restoration of impaired capital, even then he could not offset this debt against his assessment. The assessment made for the purpose of liquidating the affairs of the bank is a fund belonging in equity to all its creditors, and could not be appropriated by appellant to the exclusive payment of his own claim.

Sawyer v. Hoag, 17 Wall. 610, 21 L. Ed. 731.

The motion is overruled.